

**IT IS ORDERED as set forth below:**

Date: March 18, 2019

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| HUTCHESON MEDICAL CENTER, INC. et al., | : | CASE NO. 14-42863-PWB |
| | : | |
| Debtors. | : | CHAPTER 11 |
| _____ | : | |
| | : | |
| CORNERSTONE MEDICAL CENTER, LLC; and VALORBRIDGE PARTNERS LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | ADVERSARY NO. 18-04025-pwb |
| | : | |
| BLUE CROSS/BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC.; and BLUE CROSS AND BLUE SHIELD OF GEORGIA INC., | : | |
| Defendants. | : | |

**ORDER ON MOTIONS TO DISMISS AND TO REMAND**

1

This adversary proceeding began with a complaint that the Plaintiffs, Cornerstone Medical Center, LLC ("Cornerstone") and Valorbridge Partners, LLC ("Valorbridge") filed against the Defendants, Blue Cross and Blue Shield of Georgia, Inc. ("BCBS Georgia") and Blue Cross/Blue Shield Healthcare Plan of Georgia, Inc. ("BCBS Healthcare"), in the Superior Court of Walker County, Georgia.

The Plaintiffs owned and operated Cornerstone Medical Center, a hospital previously owned and operated as Hutcheson Medical Center ("Hutcheson") by Hutcheson Medical Center, Inc., and Hutcheson Medical Division, Inc., the Debtors in these jointly administered cases in which a trustee has been appointed. The trustee sold the hospital to Valorbridge in a sale pursuant to 11 U.S.C. § 363.

The Defendants are insurers who had prebankruptcy contracts with Hutcheson to reimburse it for medical and hospital services provided to their insureds. In connection with the sale of the hospital to Valorbridge, the trustee assumed a reimbursement contract between Hutcheson Medical Center, Inc., and BCBS Georgia and assigned it to Cornerstone under 11 U.S.C. § 365, but the assigned contract apparently had been superseded by later prebankruptcy agreements that were not assumed and assigned.

The complaint states claims against the Defendants for fraud and for breach of fiduciary duty based on their refusal to reimburse Cornerstone for hospital and

2

medical services provided to their insureds. Because the allegations involve the purchase of the hospital assets in a bankruptcy sale and a motion to assume and assign a contract with BCBS Georgia, the Defendants removed it to this Court under 28 U.S.C. § 1452(a). They invoked bankruptcy jurisdiction under 28 U.S.C. § 1334(b), which covers civil actions "arising in" or "relating to" bankruptcy cases.

After removal, the Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), *applicable under* Fed. R. Bankr. P. 7012(b), and the Plaintiffs moved to remand it to the Superior Court. While the Court considered those motions, the Plaintiffs filed an amended complaint, with leave of Court.

For reasons stated below, the Court will remand this adversary proceeding to the Superior Court of Walker County[1] and leave resolution of the motion to dismiss for that Court.

## I.  OVERVIEW AND PROCEDURAL BACKGROUND

While the bankruptcy cases of Hutcheson Medical Center, Inc., and Hutcheson Medical Division, Inc. (collectively, the "Debtors") were pending under Chapter 11, the Trustee sold certain hospital assets to Valorbridge. In connection with the sale, the Trustee filed a motion under 11 U.S.C. § 365 to assume certain

---

[1] Under Fed. R. Bankr. P. 9027, the motion to remand is a contested matter governed by Fed. R. Bankr. P. 9014. As such, it is a core proceeding that the Court may hear and determine under 28 U.S.C. § 157(b). *See* 1 *Norton Bankruptcy Law. & Practice* 3d § 7:2;  1 *Collier on Bankruptcy* ¶ 3.07[6] at 3-99 (6th ed. 2018).

3

executory contracts of the Debtors and to assign them to Cornerstonre, a permitted assignee of Valorbridge under the asset purchase agreement for the hospital the "Assignment Motion").[2]

One of the executory contracts that the Assignment Motion sought to assume and assign was a "Hospital Agreement for Preferred Provider Program" dated April 1, 1992, with Blue Cross Blue Shield of Georgia, Inc. (the "1992 Agreement").[3] The Court entered an Order on May 11, 2016, approving the assumption and assignment of the 1992 Agreement, among other executory contracts (the "Assignment Order").[4]

After the sale of the hospital assets closed on May 12, 2016, Valorbridge and Cornerstone operated Cornerstone Medical Center.[5]

A dispute arose between the Plaintiffs and the Defendants over Cornerstone's claims for reimbursement from the Defendants for medical and hospital services provided to their insureds.

---

[2] Trustee's Motion for Order Authorizing Trustee to Assume and Assign Certain Executory Contracts (Non-Governmental Commercial Pay Agreements) to Cornerstone Medical Center, LLC Post-Closing (May 9, 2016), Case No. 14-42863 Docket No. 598. A copy is attached to the Notice of Removal [1] filed by the Defendants as Exhibit B [1-2].

[3] Assignment Motion, *supra* note 2, at 10, no. 21. A redacted copy of the 1992 Agreement is attached as Exhibit 1 [6-2] to the Memorandum of Law in Support of Defendants' Motion to Dismiss. [6-1]

[4] Order Granting Trustee's Motion for Order Authorizing Trustee to Assume and Assign Certain Executory Contracts (Non-Governmental Commercial Pay Agreements) to Cornerstone Medical Center, LLC Post-Closing (May 11, 2016), Case No. 14-42863 Docket No. 603. A copy is attached to the Notice of Removal [1] filed by the defendants as Exhibit A [1-1].

[5] Notice of Removal ¶ 7, [1] at 3; Amended Complaint § 12, [15] at 3.

During the course of discussions about reimbursement, the Defendants asserted: (1) that the 1992 Agreement applied only to BCBS Georgia insureds in its Preferred Provided Program ("PPP") plans; (2) that Hutcheson Medical joined the BCBS Healthcare network in a Health Maintenance Organization ("HMO") agreement dated February 1, 2005;[6] and (3) that Hutcheson entered into new contracts with the Defendants on December 1, 2009 – a PPP Facility Agreement and an HMO Agreement (collectively, the "2009 Agreements") – that expressly superseded and replaced all previous contracts between Hutcheson and the Defendants.[7]

In October 2016, Cornerstone and the Defendants executed an amendment (the "2016 Amendment") in which, according to the Defendants, the parties agreed that the 2009 Agreements governed their relationships.[8]

On June 1, 2018, the Plaintiffs[9] filed a complaint in the Superior Court of Walker County, Georgia, Case No. 18SUCV0418, against the Defendants.[10] The Defendants timely removed the action to this Court pursuant to 28 U.S.C.

---

[6] Notice of Removal ¶ 3, [1] at 2. A redacted copy of the 2005 Agreement is attached as Exhibit 2 to the Memorandum of Law in Support of Defendants' Motion to Dismiss. [6-3]
[7] Notice of Removal ¶ 4, [1] at 2. Redacted copies of the PPP Facility Agreement and the HMO Agreement, are attached as Exhibits 3 and 4, respectively, to the Memorandum of Law in Support of Defendants' Motion to Dismiss. [6-4, 6-5].
[8] Notice of Removal ¶ 7, [1] at 3. A copy of the agreement is attached as Exhibit 7 [6-8] to the Memorandum of Law in Support of Defendants' Motion to Dismiss. [6-1]. The Exhibit contains only one agreement.
[9] AppolloMD Business Services, Inc., was also a plaintiff in the action. It has voluntarily dismissed itself as a party. [4].
[10] A copy of the complaint is attached as Exhibit C [1-3] to the Notice of Removal. [1].

5

§ 1452(a), asserting bankruptcy jurisdiction under 28 U.S.C. § 1334 [1], and moved to dismiss it under Fed. R. Civ. P. 12(b)(6), *applicable under* Fed. R. Bankr. P. 7012(b), for failure to state a claim on which relief may be granted. [6]

The Plaintiffs filed a motion to remand [5] and a motion for leave to amend their complaint. [10]. The Court in its Order entered on October 24, 2018, declined to rule on the Defendants' motion to dismiss or the Plaintiffs' motion to remand without knowing the allegations the Plaintiffs wanted to make in an amended complaint. Accordingly, the Court granted leave to amend and stated that it would consider both motions in light of the allegations of the amended complaint, after the opportunity for both sides to submit supplemental briefs with regard to the motions to dismiss and to remand.

The Plaintiffs have filed their amended complaint [15] and supplemental brief [16], and the Defendants have filed their brief in response. [17].

## II.  THE AMENDED COMPLAINT

The amended complaint [15] asserts three counts. Count One states claims for fraudulent suppression, fraudulent misrepresentation, fraudulent inducement, and deceit. (Amended Complaint ¶¶ 46-85, [15] at 10-17). Count Two states a claim for wanton or intentional breach of fiduciary duty (Amended Complaint ¶¶ 86-93), [15] at 11-19), and Count Three states a claim for negligent breach of fiduciary duty. (Amended Complaint ¶¶ 94-101, [15] at 19-21). The Plaintiffs

6

have not responded to the argument of the Defendants that Counts Two and Three fail to state claims for breach of fiduciary duty because they allege no facts giving rise to a fiduciary duty, so the Court focuses on the allegations of Count One.

The gist of Count One of the complaint is that the Defendants acted fraudulently by: (1) silently misrepresenting the existence of a contract – the 1992 Agreement – and knowingly withholding the fact that it was legally nonexistent and could not have been assigned; (2) intentionally misrepresenting over several months the reason for their nonpayment of reimbursement claims for services provided to their insureds; and (3) fraudulently inducing the Plaintiffs to enter into the 2016 Agreement , through their silence.[11]

All of these claims arise under Georgia law, and the arguments of the Defendants for their dismissal – other than the procedural one of failure to plead fraud with particularity as Fed. R. Civ. P. 9(b), *applicable under* Fed. R. Bankr. P. 7009, requires – are based on failure to allege essential elements of claims under Georgia tort law.

### III.  REMAND

Under 28 U.S.C. § 1452(b), this Court may remand this removed action "on any equitable ground."  Courts have identified a number of factors that a Court properly takes into account in determining whether to exercise its discretion to

---

[11] Plaintiffs' Brief in Support of First Amended Complaint [16] at 2.

remand a removed proceeding, including the following: (1) any impact upon the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) any difficult or unsettled questions regarding the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the lawsuit to the bankruptcy case; (6) the existence of a right to a jury trial; (7) any prejudice to the involuntarily removed parties; (8) the duplication of judicial resources; (9) the expertise of the originating court; (10) uneconomical use of judicial resources; and (11) the lessened possibility of an inconsistent result. *See, e.g., Estate of Scott v. Cervantes,* 2008 WL 11337657 at * 4 (Bankr. C.D. Cal. 2008) (citing cases); *Armstrong v. Trans-Service Logistics, Inc. (In re Trans-Service Logistics, Inc.),* 304 B.R. 809, 813 (Bankr. S.D. Ohio 2004); *General Instrument Corp. v. Financial and Business Services, Inc. (In re Finley),* 62 B.R. 361, 366 (Bankr. N.D. Ga. 1986); 1 *Norton Bankruptcy Law. & Practice* 3d § 7:2; 1 *Collier on Bankruptcy* ¶ 3.07[6] at 3-97, 3-98 (6th ed. 2018).

The duplication of judicial resources and the possibility of inconsistent results are not factors in this proceeding. All of the other factors favor remand.

The Court notes that lack of bankruptcy jurisdiction is an obviously sufficient ground to remand. Although the parties focused their remand arguments

on the existence of bankruptcy jurisdiction under 28 U.S.C. s 1334(b),[12] the Court declines to wade into the difficult question of whether this proceeding "arises in" or is "related to" the Debtors' bankruptcy cases such that bankruptcy jurisdiction exists in view of its decision to remand this matter on equitable grounds.

The reason is that the answers do not matter. If bankruptcy jurisdiction exists as the Defendants assert, the Court nevertheless declines to exercise it and will remand. On the other hand, if bankruptcy jurisdiction does not exist, as the Plaintiffs contend, remand is required.

## A.  Effect on administration of the Debtors' bankruptcy cases and the relationship of this proceeding to them

The outcome of this litigation will have no effect on the administration of the Debtors' bankruptcy cases, and this proceeding has no relationship to them beyond the fact that Valorbridge purchased the Debtors' hospital assets and Cornerstone received an assignment of the 1992 Agreement under 11 U.S.C. § 365. Even that connection was fleeting. Valorbridge's purchase of the assets took them out of the estate, and the assignment of the 1992 Agreement eliminated any liability of the estates for any future breach under § 365(k). Everything that happened after the closing of the sale between the Plaintiffs and the Defendants does not involve these Debtors, their estates, or their cases.

---

[12] Plaintiffs' Motion to Remand [5]; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand [11].

The Defendants posit that the estates of the Debtors may have liability for misrepresenting that the 1992 Agreement was operative and assignable under § 365.[13] The Court questions how the Defendants – who knew the true facts but failed to call them to the attention of the parties or the Court through an objection – could sustain such a claim. The remote and speculative possibility of liability of the estates could establish that this lawsuit is "related to" these cases for purposes of bankruptcy jurisdiction under 28 U.S.C. § 1334(b), but the theoretical prospect of such a claim does not persuade the Court that the outcome of this litigation will have any effect in these bankruptcy cases

## B. Applicability of Georgia tort law

This proceeding has little, if anything, to do with bankruptcy law.

Plaintiffs assert no claims, and the Defendants plead no defenses, based on any provisions of the Bankruptcy Code. The Plaintiffs' claims involve transactions between the parties that began when Valorbridge acquired assets and Cornerstone became the assignee of the 1992 Agreement under § 365.

But as just discussed, the applicability of bankruptcy law ended at the same time the assets were sold and the 1992 Agreement was assigned. Valorbridge owns the assets outside of the bankruptcy process, performance under the 1992 Agreement occurs without any further involvement of the Debtors or this Court,

---

[13] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand [11].

and nonbankruptcy law governs determination of the rights and duties of the parties under the 1992 Agreement.

Defendants contend that the Plaintiffs' claims implicate questions that are unique to, and would not exist outside of, a bankruptcy case. They identify two such issues: (1) whether the Defendants, as outsiders to the bankruptcy case, had a duty to object to the notice of assumption and assignment that incorrectly listed a superseded contract; and (2) whether the Defendants are potentially liable in tort for failure to so object.[14]

The issues would involve bankruptcy law if the dispute were whether Cornerstone has the right, as a § 365 assignee, to enforce the 1992 Agreement, or, conversely, whether the Defendants had the obligation to recognize Cornerstone as the assignee with all of the rights (and duties) that Hutcheson had. Such a dispute would directly require the application of § 365.

But that is not the issue here. A bankruptcy court would not properly entertain a lawsuit by either party to an assigned contract to interpret the contract, to determine whether a breach of it had occurred, or to award damages for a breach. Such a dispute involves nonbankruptcy contract law that has nothing to do with the assignment itself.

---

[14] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand [11] at 4.

Assumption and assignment under § 365 merely puts the assignee in the place of the Debtor for purposes of the assigned contract. Assignment relieves the debtor and the estate from any liability under the contract for any breach occurring after its assignment. 11 U.S.C.A. § 365(k). From that point forward, applicable nonbankruptcy law governs the relationship between the parties under the contract.

Whether later agreements superseded the assigned 1992 Agreement is not a bankruptcy issue. The Debtor has whatever rights and duties Hutcheson had under it at the time of the assumption and assignment. Georgia law governs what those rights and duties, if any, are.

For the same reasons, whether the Defendants are liable in tort is a question of the consequences under Georgia tort law of the silence of the Defendants in failing to bring to the attention of the Plaintiffs that the 1992 Agreement being assigned to them had been superseded (as well as post-assignment conduct that the complaint describes). Whether the Defendants had a duty to object to the assumption and assignment is really this question under Georgia tort law: Did they have a duty to disclose the existence of the actually operative reimbursement agreements after they were on notice that the Plaintiffs were not assuming them?

Bankruptcy law with regard to any duty to object concerns itself only with the consequences of failure to object to the proposed assumption and assignment. The bankruptcy consequence is that the bankruptcy court may authorize the

assumption and assignment even if the other party has valid grounds to refuse to permit it, and the other party will be bound by the order, and the assignment that it authorizes, under principles of claim and issue preclusion.

The Defendants observe that the Plaintiffs would have no claims if the Assignment Order had not been issued and that it provided for the Court to retain jurisdiction to determine all matters arising from or related to the Order.[15] True enough, but this does not mean that bankruptcy law applies to resolution of the Plaintiffs' claims.

The mere fact that the assignment of an executory contract occurs in a bankruptcy case does not mean that every later dispute involving the assigned contract involves bankruptcy law. Similarly, in the context of an assignment and assumption of an executory contract, the retention of jurisdiction is properly limited to disputes concerning the validity and enforceability of the assignment as a matter of bankruptcy law.

Defendants also contend that a core allegation of the Plaintiffs' complaint is that Defendants are obligated to reimburse them in accordance with the 1992 Agreement. They characterize the Plaintiffs' claims as being premised on both the 1992 Agreement being operative and assignable and Defendants' alleged duties

---

[15] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand at 3, [11] at 4.

under bankruptcy law.[16] Specifically, they assert that the Plaintiffs are asking for a declaration of "the duties of non-debtor counter-parties to an executory contract under Section 365 of the Bankruptcy Code" and an interpretation of "the scope of the [Assignment Order], *i.e.,* that the 1992 Agreement is operative and was assigned pursuant to Section 365 of the Bankruptcy Code despite the fact that it was superseded by the 2009 Agreements."[17]

The Court's previous analysis applies to these contentions. Again, the Bankruptcy Code has nothing to do with the rights and duties of parties to an assumed and assigned executory contract beyond determining any dispute as to whether it has been assumed and assigned.

In short, this proceeding involves tort claims under Georgia law that arise from events that occurred in the Debtors' bankruptcy cases. All that § 365 (and the Court's Assignment Order) did was put Cornerstone in the position of the Debtors under the 1992 Agreement, and no dispute exists about that. The disputes about the rights of the Plaintiffs and the duties of the Defendants under the 1992 Agreement, including whether it is operative and whether it has been superseded, are governed by their contractual terms and applicable Georgia contract law, not § 365. And whether the Defendants are liable in tort for failure to object to the

---

[16] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand at 4-6, [11] at 5-7.
[17] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand [11] at 6, [11] at 7.

14

assignment or otherwise disclose the actual contracts that governed the reimbursement rights of the Debtors is a question that Georgia law, not § 365 or bankruptcy law, must answer.

The Defendants' contentions in their motion to dismiss evidence their firm belief that the state law questions in this case are not difficult or unsettled. The Court need not resolve the legal issues or comment on whether they are difficult or unsettled because, even if they are not, remand is still appropriate in view of all the other factors the Court has considered. Moreover, the Court observes that, if the Defendants are correct, they should have confidence that the Superior Court will end this lawsuit.

The fact that this litigation is a pure state law matter supports remand to the Superior Court.

### C.  Comity and expertise of the state and federal judicial systems

Given that Georgia law controls the issues in this proceeding, the next considerations are the related ones of comity and the expertise of the courts in the state and federal judicial systems.

The bankruptcy jurisdiction of the district courts (usually exercised by the bankruptcy courts) is intentionally broad to permit the efficient and effective administration of bankruptcy cases and the prompt and orderly resolution of disputes that affect parties in a bankruptcy case. But Congress did not establish

expansive bankruptcy jurisdiction for the purpose of having bankruptcy courts resolve nonbankruptcy issues when a dispute is between parties who have no interest in the bankruptcy case, and when the resolution of the dispute is not necessary to the proper administration of the bankruptcy case, the application of bankruptcy law, or the interests of parties in the bankruptcy case.[18]

Principles of comity require a federal court to decline its jurisdiction (where, as here, the court has discretion in its exercise) when a state forum exists and the action does not implicate a serious federal interest. In the bankruptcy context, a court properly declines discretionary bankruptcy jurisdiction when no bankruptcy purpose exists for its exercise.[19]

That is precisely the situation here. Georgia plaintiffs asserted Georgia tort law claims against Georgia defendants in a Georgia court in a lawsuit whose result will have no effect whatsoever in the Debtors' bankruptcy case. Such a lawsuit does not properly belong in the Bankruptcy Court.

---

[18] *See generally Textile Management Associates, Inc., v. FieldTurf USA, Inc. (In re Astroturf, LLC),* 2017 WL 3889710 at * 20-21 (Bankr. N.D. Ga. 2017).

[19] *Cf. Textile Management Associates, Inc., v. FieldTurf USA, Inc. (In re Astroturf, LLC),* 2017 WL 3889710 at * 20 (Bankr. N.D. Ga. 2017). This Court observed:
>  A bankruptcy case must often interfere with the rights of some creditors in some respects for the benefit of everyone. But the Bankruptcy Code does not contemplate interference with the rights of creditors when it would serve no bankruptcy purpose. . . .
>  . . . [A] bankruptcy court is not a proper place for the resolution of private disputes between nondebtor parties that do not affect the administration of the bankruptcy case and do not have any impact on the interests of any parties in interest in the bankruptcy case.

Principles of comity are related to the concept that state court systems are better equipped to deal with state law claims than the federal courts. Whether a particular district or bankruptcy judge has more expertise with regard to a particular issue of Georgia law may vary, but it is clear that the state judicial system has more expertise in determining any question of Georgia law because the Supreme Court of Georgia, with appellate authority over a Georgia trial court, is the ultimate authority on the issue.

These considerations favor remand.

## D. Jury trial and appropriate use of federal judicial resources

The Plaintiffs have demanded a jury trial and are entitled to one. Adding a jury trial to the district court's docket[20] creates a burden on the district court that takes time away from the ability of the district judges to handle criminal and civil matters that are clearly within the district court's jurisdiction. With no federal or bankruptcy interests involved in the litigation, the appropriate allocation of scarce federal judicial resources requires determination of the lawsuit in the Superior Court where it began.

---

[20] A bankruptcy judge cannot conduct a jury trial in the absence of consent from all parties, 28 U.S.C. s 157(e), and in this Court's view should not do so even if the parties do consent. A jury trial has not occurred in the bankruptcy court in this district in the 17 years that this judge has served, and this judge is unaware of any that occurred in the 27 years that he practiced bankruptcy law in this district before that. In any event, no currently serving bankruptcy judge in this district has presided over a jury trial.

### E.  Prejudice to the involuntarily removed Plaintiffs

The only prejudice to the involuntarily removed Plaintiffs is that litigation in this Court deprives them of their choice of forum.  Because courts having discretion with regard to the exercise of jurisdiction generally defer to a plaintiff's choice of forum, this factor weighs in favor of remand.

### F.  Prejudice to the removing Defendants

In considering whether to remand on equitable grounds under 28 U.S.C. §1452(b), it is appropriate to consider any prejudice to the Defendants as the removing parties.  The Court cannot think of any.  The Defendants will suffer no cognizable prejudice if they, as Georgia corporations,[21] are required to defend tort claims under Georgia law in the Superior Court of Walker County, Georgia, where the Plaintiffs originally brought their action.

### G. Summary

This adversary proceeding involves claims under Georgia tort law originally brought in a Georgia court.  None of the Plaintiffs or Defendants is a party in interest in the Debtors' bankruptcy cases, the outcome of this litigation will have no effect on the administration of these cases, the estates of the Debtors, or their creditors; and bankruptcy law does not govern the rights and duties of the parties in any material way.  Principles of comity and the proper allocation of

---

[21] Amended Complaint ¶¶ 14, 15, [15] at 4.

18

scarce federal judicial resources favor the prosecution of this lawsuit in the Superior Court where it originated and in Georgia's judicial system where state law tort claims are regularly determined. The Plaintiffs' choice of forum is entitled to deference, and remand will cause no cognizable prejudice to the Defendants.

For all of these reasons, the Court concludes that equitable grounds exist for remand under 28 U.S.C. §1452(b), and the Court will exercise its discretion to remand this proceeding to the Superior Court of Walker County, Georgia.

## IV.  CONCLUSION

Based on, and in accordance with, the foregoing, it is hereby **ORDERED and ADJUDGED** that, pursuant to 28 U.S.C. § 1452(b), the Court in the exercise of its discretion and based on the equitable grounds set forth above hereby **REMANDS** this adversary proceeding to the Superior Court of Walker County, Georgia.

The Clerk of this Court is directed to mail a certified copy of this order to the Clerk of the Superior Court of Walker County, 28 U.S.C. § 1447(c), and to transmit copies of the docket and the record in this adversary proceeding to the Clerk of the Superior Court of Walker County.

[**This Order has not been prepared for publication and is not intended for publication.**]

**[End of Order]**

**Distribution List**

Richard E. Crum
Shealy, Crum & Pike, P.C
P.O. Box 6346
Dothan, AL 36302

Jaime L. Theriot
Troutman Sanders LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308